# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Dina Klein, | Civil No. 18-cv-949 DWF/ECW |
| Plaintiff, | |
| v. | **ORDER** |
| The Affiliated Group, Inc., and Credit Management, L.P., | |
| Defendants. | |

This matter is before the Court on Plaintiff Dina Klein's ("Klein" or "Plaintiff") Motion to Compel and for Sanctions (Dkt. No. 30) ("Motion to Compel") and Plaintiff's Motion to Amend the Amended Complaint (Dkt. No. 34) ("Motion to Amend"). For the reasons below, the Court grants the Motion to Amend and grants in part the Motion to Compel.

## I.    MOTION TO AMEND

### A.    Factual Background

#### 1.    Operative Amended Complaint

The present action relates to Defendants' alleged violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (Dkt. No. 12 ¶ 2.) Klein alleges, in relevant part, the following as part of the operative July 20, 2018 Amended Complaint.

On November 20, 2017, Defendant The Affiliated Group, Inc. ("Affiliated"), a debt collector, attempted to collect a debt from Klein arising out of health care goods or services provided by North Memorial Health Care ("North Memorial"), providing her a billing statement for two separate accounts totaling $1,084.35.  (Dkt. No. 12 ¶ 7.)

In March 2018, Klein received a letter on letterhead from Defendant Credit Management, LP ("Credit Management"), a debt collector, to collect a debt from Klein arising out of health care goods or services provided by North Memorial, providing her a billing statement for two separate accounts totaling $1,084.35.  (*Id.* ¶ 13.)  The March 2018 billing statement from Credit Management included that "the above-listed account has been turned over to us by our client" and indicated that Klein could "avoid continued collection activities by sending your payment in full directly to Credit Management, LP." (*Id.* ¶¶ 14-15.)  According to Klein, North Memorial did not, as represented in the March 2018 billing statement, turn her account over to Credit Management for collection after first turning it over to Affiliated.  (*Id.* ¶ 20.)  The alleged purpose of the communication in the March 2018 billing statement was a conspiracy between Affiliated and Credit Management to give Klein the false impression that North Memorial had turned her account over to a second debt collector, thereby increasing the pressure on Klein to pay. (*Id.* ¶ 21.)

Klein claims that the above actions by Affiliated violated 15 U.S.C. § 1692e(14), which prohibits a debt collector from collecting under a name that is not the debt collector's true name.  (*Id.* ¶¶ 26, 39.)  As it relates to Credit Management, Klein alleges that the above actions by Credit Management violated 15 U.S.C. §§ 1692e(5) (prohibiting

misrepresentations of the character or legal status of the debt) and 1692e(10) (prohibiting the use of false information to collect a debt), as North Memorial had not taken the debt back from Affiliated then placed it with Credit Management for collection. (*Id.* ¶¶ 27, 38.)

Klein also alleged that Defendants' conduct violated 15 U.S.C. §§ 1692f and 1692f(1) by using unfair and unconscionable means to collect or to attempt to collect the debt, and by attempting to collect an amount not authorized by contract or law. (*Id.* ¶ 35.) In particular, Klein asserted that sending a medical billing statement with no reference to the non-profit hospital's financial aid policies is expressly prohibited by certain Treasury Regulations set forth in 26 C.F.R. § 1.501(r)-4(b)(5)(i)(D)(2). (*Id.* ¶¶ 17, 35.) In addition, Klein claims Defendants' references to "continued collection activities" in their communications to her if she did not pay Defendants in full violated 15 U.S.C. § 1692e(5) because it was a threat "to take action that cannot legally be taken," given the legal prohibition on the sending of collection letters without reference to financial assistance. (*Id.* ¶ 37.)

The Amended Complaint also alleges the following:

Indeed, **North Memorial Health Care is party to an agreement with the Minnesota Attorney General (and approved by the Ramsey County District Court)** stating that "a hospital bill should never get in the way of a Minnesotan receiving essential health services," and acknowledging the importance of communicating financial aid policies to patients. Defendants' conduct described herein violates both law and public policy.

(*Id.* ¶ 19 (emphasis added).) According to Klein, an attempt to collect a debt while failing to comply with other applicable law violates the FDCPA. (*Id.* ¶ 36.)

The Defendants filed an Answer to the Amended Complaint.  (Dkt. No. 16.)

**2.**     **Proposed Second Amended Complaint**

The changes in the proposed Second Amended Complaint focused on the

Agreement between North Memorial and the Minnesota Attorney General ("AG

Agreement") already referenced at Paragraph 19 of the Amended Complaint:

> 24.     As referenced in Paragraph 19 above, in 2005 North Memorial
> resolved litigation with the Minnesota Attorney General through an
> agreement relating to patient billing and medical debt collection practices
> (the "AG Agreement").   On June 22, 2012, the provisions of the AG
> Agreement were put into an Order executed and entered by the Ramsey
> County District Court.  *See* Ramsey County District Court Case No. 62-C8-
> 05-004574 attached as Exhibit A.
>
> 25.     The Order from the Ramsey County District Court imposes strict
> legal requirements on collection practices involving third-party collectors:
> [North Memorial] shall enter into a written contract with any collection
> agency utilized by it to collect debt from its patients.  The contract shall
> require the collection agency to act in accordance with the terms of this
> Agreement, applicable laws, and the policies described in paragraph 36.
>
> 26.     As of March 2018, when Credit Management attempted to collect
> the alleged North Memorial debt from Ms. Klein, there was no written
> contract between North Memorial and Credit Management authorizing
> Credit Management to collect the alleged debt.   By law, Credit
> Management was not authorized to attempt to collect this debt.
>
> 27.     Credit Management's collection attempt was prohibited by law.

(Dkt. No. 34-1 ¶¶ 24-27.)

Based on these additional proposed factual allegations, Klein asserts (1)

that Credit Management violated 15 U.S.C. § 1692e(5) because it was not legal for

it to continue collection activities in the absence of a written contract with North

Memorial authorizing the collection efforts and requiring compliance with the

terms of the Ramsey County District Court Order (*id.* ¶ 29); (2) that the violation

of 15 U.S.C. §§ 1692e(5) (prohibiting misrepresentations of the character or legal

status of the debt) and 1692e(10) (prohibiting the use of false information to

collect a debt) is evidenced by the fact that at the time Credit Management sent the

billing statement to Klein, there was no contract or agreement whatsoever between

Credit Management and North Memorial authorizing Credit Management to

collect the alleged debt (*id.* ¶ 31); and (3) Klein was harmed by Defendants

because her rights and protections under the Ramsey County District Court Order

were violated, as was her right to receive truthful information regarding the

placement of her alleged debt for collection (*id.* ¶ 33).

In her "Cause of Action" section alleging violations of the FCDPA, the

proposed Second Amended Complaint claims Defendants also violated 15 U.S.C.

§§ 1692f and 1692f(1) by attempting to collect an alleged North Memorial debt

from Klein without any agreement with North Memorial authorizing such

collection, which is expressly prohibited by the AG Agreement. (*Id.* ¶ 39.)

Finally, the proposed amendment asserts that Defendants' references to "continued

collection activities" if Klein did not pay Defendants in full violated 15 U.S.C. §

1692e(5) because it was a threat "to take action that cannot legally be taken,"

given "the legal prohibition on the collection of North Memorial debt in the

absence of a written contract with North Memorial." (*Id.* ¶ 41.)

**B.** **Legal Standard**

Klein's Motion to Amend is generally governed by Rules 15 and 16 of the Federal Rules of Civil Procedure, and Local Rule 16.3 of the Local Rules for the District of Minnesota.

**1.** <u>**Rule 15**</u>

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. *See, e.g., Niagara of Wisconsin Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted). The Eighth Circuit has held that "[a]lthough amendment of a complaint should be allowed liberally to ensure that a case is decided on its merits . . . there is no absolute right to amend." *Ferguson v. Cape Girardeau Cty.*, 88 F.3d 647, 650-51 (8th Cir. 1996) (citing *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989); *Chesnut v. St. Louis Cty.*, 656 F.2d 343, 349 (8th Cir. 1981)). Denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted) ("A district court's denial of leave to amend a complaint may be justified if the amendment would be futile.").

In this case, where Defendants have alleged that the proposed amendments are futile, this Court must determine whether the proposed claims state a claim for relief at

this stage of the case. *See Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010) ("Denial

of a motion for leave to amend on the basis of futility means the district court has reached

the legal conclusion that the amended complaint could not withstand a motion to dismiss

under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, in reviewing a

denial of leave to amend we ask whether the proposed amended complaint states a cause

of action under the *Twombly* pleading standard . . . .") (citation and marks omitted); *see

also Hillesheim*, 897 F.3d at 955; *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001

(8th Cir. 2007) ("[W]hen a court denies leave to amend on the ground of futility, it means

that the court reached a legal conclusion that the amended complaint could not withstand

a Rule 12 motion."); *United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa*, 269 F.3d

932, 936 (8th Cir. 2001) ("The denial of leave to amend based on futility means that the

court found that the amended complaint failed to state a claim . . . ."). To "survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 550 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(quoting *Twombly*, 550 U.S. at 556). Analysis under Rules 15 and 12(b)(6) generally

requires a court not consider matters outside the pleadings to determine whether leave to

amend should be given. *See Arias v. Am. Family Mut. Ins. Co.*, No. CV 13-1681

(PJS/JJG), 2013 WL 12145854, at *2 (D. Minn. Oct. 28, 2013) (finding "[n]o matters

outside the pleading may be considered" when conducting a futility analysis under Rules 12(b)(6) and 15) (citing *Casazza v. Kiser*, 313 F.3d 414, 417 (8th Cir. 2002)).

 2. **Rule 16**

Under Rule 15(a) leave to amend should be granted liberally, if "justice so requires." However, the Eighth Circuit has held that when a party has filed a motion to amend the complaint after the deadline provided in a court's pretrial scheduling order, then the court may properly require, pursuant to Federal Rule of Civil Procedure 16(b), that good cause be shown for leave to file a pleading that is out of time with that order. *See Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (citing *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999)). "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *In re Milk Prod. Antitrust Litig.*, 195 F.3d at 437-38 (citation omitted).

As pointed out by Defendants in their opposition (Dkt. No. 39 at 1 n.1), the Court's Pretrial Scheduling Order required that motions which seek to amend the pleadings must be served on or before October 15, 2018. (Dkt. No. 21 at 3.) At the hearing, Klein's counsel requested that the present motion be also treated as a motion to amend the scheduling order to extend the time for amendments. Because Klein did not bring this motion until after the expiration of the deadline for non-dispositive motions, the "good cause" standard of Rule 16(b) applies to its motion to amend both the scheduling order and the complaint.

Scheduling orders pursuant to Rule 16(b)(1) "assure[ ] that at some point both the parties and the pleadings will be fixed . . . ." Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment. Moreover, "Rule 16(b) assures that '[a] magistrate judge's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded . . . without peril.'" *Archer Daniels Midland v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 582 (D. Minn. 1999) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)). Under Rule 16(b), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Similarly, Local Rule 16.3 requires a party moving to modify a scheduling order to "establish good cause" for the proposed modification.

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)); *see also* Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "[T]he 'good cause' standard [of Rule 16(b)] is an exacting one, for it demands a demonstration that the existing schedule cannot be reasonably met despite the diligence of the party seeking the extension." *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 (D. Minn. 2000) (citation omitted).

While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, the Court will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines.

*See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (concluding that there was 'no need to explore beyond the first criterion, [diligence,] because the record clearly demonstrate[d] that Bradford made only minimal efforts to satisfy the [scheduling order's] requirements"). In short, Rule 16(b) focuses on "the diligence of the party seeking to modify a Scheduling Order, as opposed to the litany of unpersuasive excuses, inclusive or inadvertence and neglect, which commonly undergird an untimely Motion to Amend." *Scheidecker*, 193 F.R.D. at 632 n.1 (citations omitted).

With these standards in mind, the Court turns to Klein's motion for leave to amend.

## C.    Analysis

### 1.    Rule 16

At the hearing, Klein's counsel represented that Klein only received the agreement between Defendants' parent entity (The CMI Group, Inc.) and North Memorial pertaining to the substitution of Credit Management for Affiliated regarding third party collection services (the "North Memorial Agreement"),[1] underlying at least in part the amendments at issue, from the Defendants two days prior to Klein filing the present motion to amend. Given that Klein did not have these documents until after the expiration of the October 15, 2018 motion to amend deadline and the fact that she quickly moved to amend the Amended Complaint once in receipt of this information, the Court finds good cause under Rule 16 to allow the amendment to proceed. *See Shank v. Carleton Coll.*, No. 16-CV-

---

[1]    A letter from Credit Management to North Memorial regarding the transfer of the Affiliated accounts was also mentioned during the hearing. However, this letter was never provided to the Court.

01154 (ECT/HB), 2019 WL 121938, at *3 (D. Minn. Jan. 7, 2019); *see also Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. 09-cv-1091 (JNE/JSM), 2010 WL 4193076, at *6 (D. Minn. Oct. 7, 2010) ("[A] party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation.") (citations omitted).

### 2.  <u>Rule 15</u>

At the hearing, Klein's counsel represented that the proposed amendments fell into two categories.  First, Klein's counsel asserted that the new allegations provided additional facts in support of paragraph 20 of the Amended Complaint alleging that "[o]n information and belief, North Memorial did not, as represented in the March 2018 billing statement, turn Ms. Klein's account over to Credit Management for collection after first turning it over to Affiliated."  (Dkt. No. 12 ¶ 20.)  Klein asserts that Defendants produced documents on November 28, 2017 confirming the allegations in paragraph 20.  (Dkt. No. 36 at 2-3.)  At the hearing, Klein's counsel was only able to point to the North Memorial Agreement, effective May 11, 2018 (albeit signed in May and October 2018), as confirming those allegations.[2]

Second, most of the proposed additions by Klein to the Amended Complaint pertain to Credit Management's efforts to collect a debt for North Memorial without a written contract in violation of the AG Agreement, which according to Klein constitutes new grounds for her assertion that Credit Management violated her rights under 15

---

[2]  The North Memorial Agreement was provided to the Court for the first time at the hearing and is otherwise not part of the record.

U.S.C. § 1692f(1), as an attempt to collect on a debt not authorized by the law.[3] (*See also* Dkt. No. 36 at 3 (describing "legal significance" of new allegations).) According to Klein's counsel, the theory in the operative Amended Complaint was that Credit Management had no authority to collect on Klein's debt on behalf of North Memorial. That theory was based on the allegation that there was no agreement between Credit Management and North Memorial at the time of the collection. Klein's counsel argued that the proposed amendments specifying that there was no "written contract" between those entities are necessary to protect against any assertion by Defendants that the contracts were orally transferred to Credit Management in January 2018, thereby authorizing Credit Management to collect on the debt.[4] In other words, Klein's proposed new theory appears to be that Credit Management violated the FDCPA because it did not have the authority under the AG Agreement to collect on her debt with North Memorial

---

[3]      Section 1692f provides in relevant part:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) **unless such amount is expressly authorized by the agreement creating the debt or permitted by law**.

15 U.S.C. § 1692f (emphasis added).

[4]      As set forth more fully below as it relates to Klein's Motion to Compel, Affiliated testified at its October 17, 2018 Rule 30(b)(6) deposition that its contracts with North Memorial were reassigned to Credit Management in January 2018. (Dkt. No. 33-2 at 44-45.)

in March 2018, given that the earliest effective date of the <u>written</u> North Memorial Agreement is May 2018.  (*See* Dkt. No. 36 at 3.)

In response, Defendants argued that this Court should deny the Motion to Amend because it is futile and because it would result in undue prejudice to them in the form of requiring Defendants to file yet another answer and potentially take Plaintiff's deposition again on the new theories presented.[5]  (Dkt. No. 39 at 1-2.)

As it relates to futility, Defendants invoked *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), at the hearing, arguing that Klein cannot demonstrate the requisite harm to bring a FDCPA claim.  In particular, Defendants argue that the fact that there was no alleged valid collections contract between North Memorial and Credit Management at the time Credit Management attempted collection of her debt did not injure Klein, and that the lack of injury is demonstrated by her deposition testimony that she was unaware of the lack of a contract between Credit Management and North Memorial:

> It is obvious that Plaintiff was not aware of the alleged lack of contract and could not have been harmed by it.  If the proposed amendments actually were "merely flesh[ing] out the factual background" of Plaintiff's complaint, then surely Plaintiff would have testified that she was harmed by CM allegedly not having a contract with NMHC. Yet Plaintiff did not do this.  **The only alleged harm Plaintiff ever testified to was being confused as to who should be collecting the debt**.

---

[5]     Defendants also argued that the Proposed Second Amended Complaint contains inconsistent language because it alleges that the account was not turned over to Credit Management, but also alleges that it was the account was turned over, but Credit Management still violated the FDCPA because there was no contract with North Memorial.  (Dkt. No. 39 at 3.)  However, the Court finds no inconsistencies, as both allegations pertain to whether Credit Management had legal authority to collect from Klein, which according the AG Agreement requires Credit Management to have a written contract with North Memorial.  (*See* Dkt. No. 34-1 ¶¶ 20, 26.)

(Dkt. No. 39 at 3-4 (citation omitted) (emphasis added).)

Defendants go on to assert that "Plaintiff's testimony contradicts her own claims regarding this alleged harm, as Defendants will show during dispositive briefing." (*Id.* at 4 n.2.) The FDCPA aims to protect consumers from risks of fraud, deception, and abusive collecting practices. *See Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1054 (8th Cir. 2002). In order to have standing to bring a FDCPA claim there must be violation of the statute that causes a concrete injury. *See Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691 (8th Cir. 2017) (citing *Spokeo*, 136 S. Ct. at 1549). "That concrete injury can be 'the risk of real harm.'" *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549). "Where 'the violation of a procedural right granted by statute' creates the risk of real harm, a plaintiff 'need not allege any additional harm beyond the one Congress has identified.'" *Id.* (quoting same). A debt collector's alleged misrepresentation regarding the current legally authorized creditor could create a concrete risk of Article III harm, because a debtor who is confused about the identity of the authorized collector might be misled into making payments to the wrong entity.[6] Moreover, Defendants' argument regarding a lack of harm to is based on Klein's deposition testimony, which is outside the pleadings. *See Arias*, 2013 WL 12145854, at *2 (finding "[n]o matters outside the pleading may be considered" when conducting a futility analysis under Rule 15) (citing *Casazza* 313 F.3d at 417). As Defendants correctly assert, they will have the opportunity

---

[6] The Court also notes that the portion of the AG Agreement that requires a written contract would also require Credit Management to agree to act in accordance with the protections to consumers, including Klein, afforded by the AG Agreement. (Dkt. No. 34-2 ¶ 15.)

at a summary judgment to rely on Klein's deposition testimony in order to defeat her claims.

Defendants' other argument related to futility is that none of the parties in this case are a party to the AG Agreement. (Dkt. No. 39 at 4.) Thus, it is Defendants' position that Klein does not have standing to sue for violation of the AG Agreement and that they should not be found liable under the FDCPA for separate actions taken by North Memorial. (*Id.*) The Court disagrees.

The FDCPA "was not meant to convert every violation of a state debt collection law into a federal violation." *Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004). Only collection activities that are false, deceptive, or misleading or threaten "to take any action that cannot legally be taken under state law" will also amount to FDCPA violations. *Id.* (citations and internal quotation marks omitted); *see also Haney v. Portfolio Recovery Assoc., L.L.C.*, 895 F.3d 974, 989 (8th Cir. 2016) (holding that the plaintiff stated a viable claim under 15 U.S.C. § 1692f(1) based on the defendant's attempt to collect compound interest in violation of Missouri's prejudgment interest statute); *Klein v. Stewart Zlimen & Jungers, Ltd.*, No. 18-cv-658 (JRT/ECW), 2019 WL 79317, at *4-5 (D. Minn. Jan. 2, 2019) (finding that plaintiffs stated a viable claim under 15 U.S.C. § 1692f(1) where creditor's conduct violated agreement between its client and the Minnesota Attorney General); *Goetze v. CRA Collections*, No. 15-cv-3169 (MJD/FLN), 2017 WL 5891693, at *4 (D. Minn. Nov. 28, 2017) (finding violation of § 1692f(1) where defendants engaged in collection without first being licensed to collect debts as required by Minnesota law).

In a recent decision by United States Chief District Judge John R. Tunheim in *Klein v. Stewart Zlimen & Jungers*, *supra*, the court found a viable § 1692f(1) claim against a debt collector who allegedly engaged in conduct contrary to an agreement between its customer Allina Health and the Minnesota Attorney General. 2019 WL 79317, at *4-5. In particular, Allina entered into an agreement with the Minnesota Attorney General's Office to change its patient billing and medical debt collection practices and prohibiting certain practices including, prohibiting Allina from commencing legal action against a patient unless "the patient has been given a reasonable opportunity to submit an application for Charity Care" and requiring that Allina serve with any summons and complaint a lawsuit information sheet approved by the Attorney General's Office. *Id.* at *2. The plaintiffs argued that the defendant violated that agreement with the Attorney General because it sued the plaintiffs without giving the plaintiffs reasonable time to apply for charity care; and did not provide a lawsuit information sheet with the summons and complaint served on the plaintiffs. *Id.* at *4. Similar to the arguments made by Credit Management in this case, the defendant Stewart Zlimen & Jungers ("Stewart") argued that neither it nor the plaintiffs were a party to the agreement between Allina and the Attorney General, so an act by Stewart contrary to that agreement was not a breach or violation. *Id.* Judge Tunheim rejected this argument:

> In response to Stewart's first point, the Kleins argue that they are not suing to enforce the AG Agreement. Rather, they are suing under a different theory: that a violation of law—here, the AG Agreement—constitutes a violation of the FDCPA, and therefore the cause of action arises from the FDCPA. Plaintiffs cite to *Arroyo v. Solomon & Solomon P.C.*, where the court rejected the argument that because a plaintiff did not have a private right of action to enforce a statute, they could not sue under the FDCPA

16

based on its violation. Civ. No. 99-CV-8302 (ARR) 2001 WL 1590520 (S.D.N.Y. 2001). Although the Court is not bound by *Arroyo*, the case is instructive. A plaintiff who pleads a violation of § 1692f(1) based on an action not "permitted by law" must necessarily plead that another law, not the FDCPA, was violated. That does not make the claim "arise under" that other law. Furthermore, nowhere in § 1692f(1) does it require that the violated law be one that is privately enforceable. Reading such a limitation into the statute would considerably narrow the scope of protections afforded by the FDCPA. This Court declines to do so. As such, the Court will deny Stewart's motion to the extent it argues the Kleins are suing to enforce the AG Agreement and that they lack a private right of action to do so.

(*Id.*) Klein makes the same argument in this case—that she not suing to enforce AG Agreement but rather asserting that a violation of the AG Agreement constitutes a violation of the FDCPA. The Court agrees with the reasoning of *Klein v. Stewart Zlimen & Jungers*, and concludes that Credit Management's alleged collection of a debt for North Memorial without a written contract in violation of the AG Agreement constitutes a viable § 1692f(1) claim. Any assertion by Credit Management that it should not be held liable under the FDCPA because they are not a party to the AG Agreement is further placed into doubt by the fact that the AG Agreement requires collectors to agree in writing to act in accordance with its protections to consumers, including Klein, afforded by the AG Agreement, prior to engaging into collection on behalf of North Memorial. (Dkt. No. 34-2 ¶ 15.) Whether Credit Management knew about this requirement prior to collection will be borne out by discovery.

In addition, the Court finds no undue prejudice to Defendants by allowing Klein to amend the Amended Complaint. While the Court recognizes that Defendants will need expend additional time and effort due to this amendment, including filing a new answer

17

and potentially engaging in additional discovery, this by itself does not amount to <u>undue</u> prejudice. If this was the case, then every motion to amend would be denied. Moreover, any undue prejudice suffered by Defendants as the result of having to re-depose Klein is self-imposed. Fact discovery in this matter ends in April 2019, yet Defendants chose to take Klein's deposition in October 2018, almost six months prior to the expiration of discovery. While Defendants had every right to take the deposition of Klein on a date of their choosing, the Court will not punish Klein simply because Defendants chose a date so early in the fact discovery period.

For all of the reasons stated above, the Court grants Klein's Motion to Amended in its entirety.

## II. <u>MOTION TO COMPEL</u>

### A. **Factual Background**

On or about August 27, 2018 and again on October 10, 2018, Klein noticed the Rule 30(b)(6) deposition of Affiliated. (Dkt. No. 33 ¶ 3.) The deposition topics provided to Affiliated were as follows:

1. The Affiliated Group, Inc.'s ("AGI") corporate structure.

2. AGI's business relationship with North Memorial Health Care.

3. AGI's business relationship with Credit Management, LP.

4. All activities undertaken by AGI in relation to the alleged debt referred to in Paragraph 7 of the Amended Complaint.

5. Facts underlying AGI's bona fide error defense as stated in Paragraph 45 of the Answer.

6. AGI's responses to Plaintiff's Interrogatories.

7.      AGI's efforts to comply with laws and regulations governing the collection of medical debts.

8.      AGI's practices and policies relating to informing consumers regarding hospital financial assistance policies.

(Dkt. No. 33-1.)

Affiliated conceded at the hearing that it did not make any objections to these deposition topics. Affiliated offered Eric Gopinski[7] as its single 30(b)(6) designated witness for all of the topics. The Rule 30(b)(6) deposition was held on October 17, 2018 and lasted for approximately 3 hours. (Dkt. No. 33-1, ¶ 2; Dkt. No. 33-2.) As it relates to his preparation for the Rule 30(b)(6) deposition, Gopinski testified as follows: (**Topic No. 1**) that he met with counsel and reviewed a number of documents (Dkt. No. 33-2 at 6-7); (**Topic No. 2**) that outside of his understanding of the relationship with North Memorial he only met with legal counsel (Dkt. No. 33-2 at 9); (**Topic No. 3**) that he only met with legal counsel, spoke with no one else at Affiliated and reviewed no documents (Dkt. No. 33-2 at 9-10); (**Topic No. 4**) that he only met with legal counsel and reviewed the Amended Complaint and documents that he brought to the deposition (Dkt. No. 33-2 at 10-11, 15); (**Topic No. 5**) that he only met with legal counsel, spoke with no one else at Affiliated, reviewed the Answer referenced in the topic and reviewed no other documents (Dkt. No. 33-2 at 13-14); (**Topic No. 6**) that he only met with legal counsel and reviewed Affiliated's Answers to Interrogatories (Dkt. No. 33-2 at 15-16); (**Topic**

---

[7] Gopinski's title with Affiliated was Vice President of call center operations and he had also served at its director of collections. (Dkt. No. 33-2 at 28-29.) Gopinski was first employed by Credit Management on January 1, 2018, and he has the same title with Credit Management as he did with Affiliated. (*Id.* at 28-29, 51.)

**No. 7**) that he spoke to legal counsel and verified Affiliated's internal practices by speaking with another employee regarding the script agents used when talking to consumers as part of collections (Dkt. No. 33-2 at 16-19); and (**Topic No. 8**) that he only had communications with legal counsel in preparation for this deposition topic (Dkt. No. 33-2 at 21).

**B.     Legal Standard**

In order for Rule 30(b)(6) to effectively function:

> the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute. Correlatively, the responding party must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the interrogator] as to the relevant subject matters.

*Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000) (citations omitted); *see also Johnson v. Charps Welding & Fabricating, Inc.*, No. 14-CV-2081 (RHK/LIB), 2017 WL 9516243, at *15 (D. Minn. Mar. 3, 2017). The testimony from a Rule 30(b)(6) deponent "represents the collective knowledge of the corporation, not of the specific individual deponents" and therefore "[t]he duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved." *United States v. Stabl Inc.*, No. 8:16CV233, 2018 WL 3758204, at *4 (D. Neb. Aug. 8, 2018) (citing *Waste Connections, Inc. v. Appleton Elec., LLC,* No. 8:12CV436, 2014 WL 1281918, at *3 (D. Neb. Mar. 27, 2014), quoting *QBE Ins. Corp. v. Jorda Enter., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012)). This obligation "requires the designee to testify about information 'known or

reasonably available' to the organization" and can include "information held by third-party sources if that information is reasonably available [to the organization]." *W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, No. 13-cv-1686 (JRT/FLN), 2017 WL 9325026, at *7 (D. Minn. Oct. 12, 2017). "'Any other interpretation of the Rule would allow the responding corporation to sandbag the depositional process by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial.'" *Fagen, Inc. v. Exergy Dev. Grp. of Idaho, L.L.C.*, No. 12-cv-2703 (MJD/SER), 2015 WL 12977508, at *2 (D. Minn. Aug. 12, 2015) (quoting *Prokosch*, 193 F.R.D. at 638).

"That being said, Rule 30(b)(6) designees need not be 'perfect'; designees are responsible for information 'known or reasonably available to the corporation.'" *Mallak v. Aitkin Cty.*, No. 13-CV-2119 (DWF/LIB), 2016 WL 8607391, at *7-8 (D. Minn. June 30, 2016), *aff'd,* 2016 WL 8607392 (D. Minn. Sept. 29, 2016) (quoting *Bombardier Recreational Prod., Inc. v. Arctic Cat, Inc.*, No. 12-CV-2706 (MJD/LIB), 2014 WL 10714011, at *10 (D. Minn. Dec. 5, 2014)). Moreover, a "Rule 30(b)(6) deponent is not expected to be clairvoyant, so as to divine the specific questions that could [be presented]." *Id.*

## C.    Analysis

The Court's review of the deposition transcripts of the Rule 30(b)(6) deposition indicates Gopinski was reasonably well prepared for the depositions, for the most part, especially in light of his experience with Affiliated. Gopinski testified, adequately, about the various broad topics noticed for deposition. The mere fact that Gopinski was not able

to answer some questions during the more than three hours of testimony does not in of itself demonstrate he was entirely unprepared to testify about information that was or reasonably should have been known by Affiliated. *See Mallak*, 2016 WL 8607391, at *7-8 (citing *Bombardier Recreational*, 2014 WL 10714011, at *10 (concluding failure to answer a few discrete questions in response to very broad topics noticed for a Rule 30(b)(6) deposition did not indicate that the deponent was unprepared)).

That said, the Court acknowledges Gopinski testified during his deposition that he failed in many cases to review any documents or speak with anyone other than counsel regarding the various topics propounded by Klein. (*See, e.g.*, Dkt. No. 33-2 at 9-10.) It is unclear what documents Klein maintains Gopinski should have reviewed in preparation for the Rule 30(b)(6) deposition so that more complete testimony could have been provided by Gopinski. When asked at the hearing what documents Gopinski should have reviewed, Klein's counsel was able to point to the North Memorial Agreement and any possible documents related to the assignment of accounts between Affiliated and Credit Management.

According to Gopinski, Affiliated had ceased doing business as of January 1, 2018, because its accounts had been assigned to Credit Management based on an agreement between the two entities. (Dkt. No. 33-2 at 44-45.) Klein's counsel argued at the hearing that Klein had the right to test the veracity of that assignment, especially in light of the agreements, about which Gopinski was unprepared to testify. In particular, the deposition testimony demonstrates that Gopinski was not prepared to testify about matters related to the assignment of accounts between Affiliated and Credit Management:

**BY MR. SCHWIEBERT:**

**Q.** The reassignment of accounts was pursuant to some written agreement between The Affiliated Group and some entity in the Credit Management organizational tree, correct?

**MR. MARTIN:** Same objection. You may answer.

**THE WITNESS:** I don't know what written documentation was there.

**BY MR. SCHWIEBERT:**

**Q.** You are not aware of any written documentation between Credit Management, Inc., and its parent, CMI Acquisitions, Inc., or its grandparent, if you like that term, The CMI Group, Inc., providing for the reassignment of accounts, as you used that phrase?

**MR. MARTIN:** Objection to form. You may answer.

**THE WITNESS:** I am not aware of anything specific to that date, January 1st. I'm not aware of what documentation is in place specific to that date for the reassignment of those accounts.

**BY MR. SCHWIEBERT:**

**Q.** Is there an agreement prior to that date that provided for the reassignment of accounts from The Affiliated Group to Credit Management?

**MR. MARTIN:** Objection. Form. You may answer.

**THE WITNESS:** I don't know.

* * *

**Q.** Not within the context of just the client's debt, is there a separate agreement now where accounts can be transferred for collection or resolution directly between North Memorial Health Care and Credit Management, LP?

**MR. MARTIN:** Same Objection. You may answer.

**THE WITNESSES:** I believe there's an amendment or an additional document.

**BY MR. SCHWIEBERT:**

**Q.** Okay. Now, as to these -- let me ask it broadly. Was the Klein account assigned for collection purposes from The Affiliated Group to Credit Management, LP, on January 1, 2018?

**MR. MARTIN:** Objection. Form. You may answer.

**THE WITNESS:** Yes.

**BY MR. SCHWIEBERT:**

**Q.** Is there some document that reflects that transfer?

**A.** Not that I'm aware of.

\* \* \*

**BY MR. SCHWIEBERT:**

**Q.** Now, you said that you are aware of a document in which Credit Management, LP, informs North Memorial Health Care that these accounts are being assigned from The Affiliated Group to Credit Management, LP, correct?

**MR. MARTIN:** Objection. Form. You may answer.

**THE WITNESS:** I said I believe there was.

**BY MR. SCHWIEBERT:**

**Q.** Have you seen that document?

**A.** I don't think so. I don't believe I have.

**Q.** Since you don't believe you have, you didn't review it in preparation for this deposition?

**MR. MARTIN:** Objection. Form. You may answer.

**THE WITNESS:** Correct.

**BY MR. SCHWIEBERT:**

**Q.** You didn't bring a copy of it with you today?

**A.** No.

* * *

**BY MR. SCHWIEBERT:**

**Q.** The Affiliated Group is giving up something. Is there an agreement for that assignment of accounts for collection?

**MR. MARTIN:** Objection. Form. Answer.

**BY MR. SCHWIEBERT:**

**Q.** I apologize if you've already told me the answer to that.

**A.** I don't know.

**Q.** Okay.

**A.** Not that I'm aware of. I don't know.

* * *

**BY MR. SCHWIEBERT:**

**Q.** On this date at the end of 2017 and the beginning of 2018, something of value transfers from, according to your testimony, The Affiliated Group to Credit Management, LP. I understand we don't know if there's a written document that enabled that to happen. Did The Affiliated Group receive something in exchange?

**MR. MARTIN:** Objection to form. You may answer, if you know.

**THE WITNESS:** I don't know. I don't know the answer. I don't believe so. I don't know.

(*Id.* at 45-46, 60-63, 106, 108.)

Gopinski admitted that he did not know what written documents exist relating to the agreement between Affiliated and Credit Management pertaining to the reassignment of accounts from North Memorial. Exacerbating this lack of knowledge is the fact that Gopinski acknowledges having failed to review any documents or talking with anyone but legal counsel as part of his preparation to testify on Topic Numbers 2 and 3. (Dkt. No. 33-2 at 9-10.) It is clear from his testimony that Gopinski was unprepared to answer the questions about the agreement between Affiliated and Credit Management related to the reassignment of accounts from North Memorial. Indeed, he testified "I don't know what written documentation was there." (*Id.* at 45-46.) Such information pertains to at least Topic Number 2 (AGI's business relationship with North Memorial Health Care) and Topic Number 3 (Affiliated's business relationship with Credit Management, LP). It is also relevant to the claims at issue in this case, including Klein's assertion that Credit Management falsely asserted in the March 2018 billing statement to her that North Memorial had turned over its account for collection after first turning it over to Affiliated. (Dkt. No. 12 ¶¶ 20, 38.)

Therefore, the Court will grant the motion to compel insofar as permitting Klein to reconvene the Rule 30(b)(6) deposition of Affiliated for the limited purpose of inquiring into Affiliated's knowledge as to all agreements between Affiliated (and any related entities) and North Memorial relating to collection of Klein's debts; all agreements (written or otherwise) related to the reassignment of North Memorial-related accounts

from Affiliated to any Credit Management entity;[8] who was involved in entering into any such agreements; the terms of any reassignment agreement and whether there were any written agreements between Affiliated and any Credit Management entity related to the reassignment, and any reasonable follow-up to such questioning.  The Court will also allow Klein to ask Affiliated's Rule 30(b)(6) deponent regarding <u>Affiliated's knowledge</u> of the Agreement between North Memorial and Credit Management or any other agreement between the two entities related to Klein's account, as this relates to Topic Numbers 2 and 3.[9]  Affiliated will be required to fully prepare a deponent to testify on these topics, which would include having the deponent review all relevant documents Affiliated's possession, custody, or control and to obtain information from other individuals to the extent necessary to allow the deponent to fully address these topics on behalf of Affiliated.  The remainder of Klein's motion to compel is denied.[10]

---

[8]     Gopinski testified that The CMI Group, Inc.is the owner or parent for both Affiliated and Credit Management.  (Dkt. No. 33-2 at 35, 38.)

[9]     The Court understands based on the parties' representations at the hearing that Credit Management's Rule 30(b)(6) deposition has been noticed.

[10]     Klein has requested guidance from the Court regarding Affiliated counsel's instructions to the deponent not to answer when a question does not pertain to one of the Rule 30(b)(6) deposition topics.  (Dkt. No. 32 at 26-27 (citing Dkt. No. 33-2 at 33-34).)  Klein does not seek an order compelling Affiliated to answer any questions where this occurred during Gopinski's deposition.  (*Id.*)  Defining the specific contours of what is and is not discoverable, without the benefit of a specific discovery request, is akin to providing an advisory opinion.  To the extent that Affiliated's counsel in the future instructs a deponent not to answer on the basis that a question is outside the scope of a designated topic, the Court encourages the parties to contact the Court during the deposition in order to resolve any disputes without the need for reopening a deposition.

Klein requested monetary sanctions under Rule 37(d).  (Dkt. No. 32 at 25.)  The Court will not award sanctions under Rule 37(d) as it relates to the deposition of Affiliated.  Rule 37(d) permits courts, on a motion by the aggrieved party, to order sanctions if a party "fails, after being served with proper notice, to appear for that person's deposition[.]"  Fed. R. Civ. P. 37(d)(1)(A)(i).  The Eighth Circuit has strictly construed Rule 37(d) to only to apply to a failure to appear at a deposition, as opposed to not answering questions.  *See Aziz v. Wright*, 34 F.3d 587, 589 (8th Cir. 1994); *see also AGinformationData, LLC v. Integrated Sols. Grp., Inc.*, No. 11-cv-3673 (DWF/JSM), 2014 WL 12610208, at *11 (D. Minn. Mar. 20, 2014).  There is no dispute that Affiliated appeared at its deposition.  That said, should Affiliated fail to properly prepare a Rule 30(b)(6) deponent on the topics set forth in this Order, the Court will consider whether sanctions under Rule 37(b) are appropriate.

## III.   ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.      Plaintiff Dina Klein's Motion to Compel and for Sanctions (Dkt. No. 30) is **GRANTED** in part and **DENIED** in part as follows:

> a.      Klein may reconvene the Rule 30(b)(6) deposition of Affiliated for the limited purpose of inquiring into Affiliated's knowledge regarding all agreements between Affiliated (and any related entities) and North Memorial relating to collection of Klein's debts; all agreements (written or otherwise) related to the reassignment of North Memorial-related accounts from Affiliated to any Credit Management entity; who was involved in entering into any such agreements; the terms of any reassignment agreement and whether there were any written agreements between Affiliated and any Credit Management entity related to the reassignment, and any reasonable follow-up to such questioning.  The Court will also allow Klein to ask

Affiliated's Rule 30(b)(6) deponent regarding Affiliated's knowledge of the Agreement between North Memorial and Credit Management as it relates to topics 2 and 3. Affiliated will be required to fully prepare a deponent to testify on these topics, which would include having the deponent review all relevant documents Affiliated's possession, custody or control and to obtain information from other individuals to the extent necessary to allow the deponent to fully address these topics on behalf of Affiliated.

     b.    The remainder of the motion to compel and the request for advisory opinion regarding discovery is **DENIED**.

2.    Plaintiff's Dina Klein's Request for monetary Sanctions is **DENIED**.

3.    Plaintiff's Motion to Amend the Amended Complaint (Dkt. No. 34) is

**GRANTED**.

4.    On or before **February 1, 2019**, Plaintiff shall file and serve her Second Amended Complaint in substantially the same form (without redline)[11] as the proposed second amended complaint (Dkt. No. 34-1) submitted with this Motion.

5.    Defendants shall respond to the Amended Complaint in a manner consistent with the Federal Rules of Civil Procedure.

DATED: January17, 2019               *s/Elizabeth Cowan Wright*
                                    ELIZABETH COWAN WRIGHT
                                    United States Magistrate Judge

---

[11]    Counsel for Klein are reminded that the Local Rules require "[a]ny motion to amend a pleading must be accompanied by: (1) a copy of the proposed amended pleading, **and** (2) a version of the proposed amended pleading that shows — through redlining, underlining, strikeouts, or other similarly effective typographic methods — how the proposed amended pleading differs from the operative pleading." D. Minn. LR 15.1(b) (emphasis added).