# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Dina Klein,  Civil No. 18-cv-949 DWF/ECW

Plaintiff,

v.  **ORDER**

The Affiliated Group, Inc., and
Credit Management, L.P.,

Defendants.

This matter is before the Court on Plaintiff Dina Klein's ("Klein" or "Plaintiff")
Second Motion to Compel (Dkt. No. 51) ("Motion to Compel").  For the reasons below,
the Court denies the Motion to Compel.

## I.  <u>FACTUAL BACKGROUND</u>

### A.  **Case Background**

The present action relates to Defendants' alleged violations of the Fair Debt
Collections Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

As alleged in the Second Amended Complaint, on November 20, 2017, Defendant
The Affiliated Group, Inc. ("Affiliated"), a debt collector, attempted to collect a debt
from Klein arising out of health care goods or services provided by North Memorial
Health Care ("North Memorial"), providing her a billing statement for two separate
accounts totaling $1,084.35.  (Dkt. No. 48 ¶ 7.)

In March 2018, Klein received a letter on letterhead from Defendant Credit Management, LP ("Credit Management"), a debt collector, to collect a debt from Klein arising out of health care goods or services provided by North Memorial, providing her a billing statement for two separate accounts totaling $1,084.35.  (*Id.* ¶ 13.)  The March 2018 billing statement from Credit Management, using the same address and P.O. Box as Affiliated, included that "the above-listed account has been turned over to us by our client" and indicated that Klein could "avoid continued collection activities by sending your payment in full directly to Credit Management, LP."  (*Id.* ¶¶ 14-15.)  Plaintiff alleges that Affiliated and Credit Management conspired to give her the false impression that North Memorial had turned her account over to a second debt collector, thus increasing the pressure on her to pay, and that Credit Management's conduct constituted a misrepresentation of the legal status of the debt, and a false representation in connection with the collection of a debt.  (*Id.* ¶¶ 21-22.)  Plaintiff also alleges that both letters violated the FDCPA because they failed to contain any reference to North Memorial's financial assistance plan, much less a conspicuous written notice with the required hospital contact information, which Plaintiff contends is required under federal regulations.  (*Id.* ¶¶ 11-12, 17-18.)  In addition, Plaintiff alleges Credit Management violated the FDCPA (including §§ 1692f, 1692e(5)) by trying to collect on the same North Memorial debt because it was illegal under an agreement between North Memorial and the Minnesota Attorney General ("AG Agreement") for Credit Management to engage in collection activities in the absence of a written contract with North Memorial authorizing the collection efforts.  (*Id.* ¶¶ 39-41; Dkt. No. 53 at 1.)

**B.     Discovery at Issue**

On November 29, 2018, Plaintiff attempted to serve Defendants' counsel, via

email, with PLAINTIFF'S DISCOVERY REQUESTS TO DEFENDANTS (SET II)

("Set II").  (Dkt. Nos. 54-1; 54-2.)  Defendants assert they "never expressly consented to

electronic service in this case."  (Dkt. No. 56 at 12.)  Plaintiff does not dispute this

assertion.  Set II of discovery contained a single document request—Request No. 6:

> 6. Produce a copy of **all written communication** between Credit
> Management LP and patients of North Memorial Health Care prior to
> October 30, 2018, where the patient had previously received written
> communication from the Affiliated Group, Inc.

(Dkt. No. 54-1 (hereinafter "Request No. 6") (emphasis added).)

On January 9, 2019, Plaintiff's counsel sent an email to Defendants asserting that

the period for objections had expired, and seeking confirmation that Defendants would

"produce all the responsive documents. . . ."  (Dkt. No. 54-2.)  On January 10, 2019,

Defendants served the following response and objections to Request No. 6, via email, on

Plaintiff:

> <u>**RESPONSE**</u>: Defendants object to this request as irrelevant and not
> proportional to the needs to of the case. Defendants object to this request
> to the extent it seeks confidential and proprietary information. Defendants
> object to this request as irrelevant and not likely to lead to the discovery of
> admissible evidence. Defendant objects to this request as it seek [sic]
> confidential and private information of non-parties. Defendant is
> withholding documents responsive to this request.

(Dkt. No. 54-3 (emphasis in original).)

On January 28, 2019, Defendants served on Plaintiff the following amended

response and objections to Request No. 6, via email and U.S. Mail:

**AMENDED RESPONSE:** Defendants object to this request as irrelevant and not proportional to the needs to of the case. Defendants object to this request to the extent it seeks confidential and proprietary information. Defendants object to this request as irrelevant and not likely to lead to the discovery of admissible evidence. Defendants object to this request as it seeks confidential and private information of non-parties. Additionally, Defendants are unable to respond to this request as written because Defendants do not have a way to determine who "received" actual communication.

(Dkt. No. 54-5 (emphasis in original).)

The parties were unable to resolve their dispute as part of the meet and confer process. Plaintiff's Motion to Compel followed. The Court held a hearing on the Motion to Compel on February 22, 2019. (Dkt. No. 58.)

## II.  LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Relevancy encompasses "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in this case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978). While Rule 26 contemplates a liberal scope of discovery, this Court "possess[es] considerable discretion in determining the need for,

and form of, discovery. . . ." *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 949 (D. Minn. 2015) (citations omitted).

Further, as set forth above, not only must information sought in discovery be relevant, it must also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "In determining proportionality, courts consider numerous factors, including 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, and importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Beseke v. Equifax Info. Servs., LLC*, No. 17-CV-4971-DWF-KMM, 2018 WL 6040016, at *3 (D. Minn. Oct. 18, 2018). To this end, a court upon a motion or on its own "must" limit discovery, when the discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action" or if the discovery is outside of the scope of Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

## III.    ANALYSIS

### A.    Overview of the Parties' Arguments

Plaintiff's Motion to Compel asserts as follows:

Plaintiff's request for production seeks letters sent by Defendants to patients of North Memorial Health Care prior to October 30, 2018. October 30, 2018 is the date of the signature by Credit Management, LP on the alleged agreement between North Memorial Health Care and Credit Management, LP. The request is further limited to letters sent to consumer

in the same situation as Plaintiff – consumers who had previously been sent collection letters by The Affiliated Group Inc.

(Dkt. No. 53 at 1.)

In her brief, Plaintiff argues that the letters sent to North Memorial patients by Credit Management who also received previous collection letters from Affiliated are relevant to issues in this case because: "(1) 'the frequency and persistence of such noncompliance by the debt collector' is relevant to the amount of statutory damages. 15 U.S.C. § 1692k(b)(1); (2) the frequency of such an alleged violation relates to the 'bona fide error' defense asserted by the Defendants; and (3) it goes to the issue of consumer confusion or 'materiality.'" (Dkt. No. 53 at 1-2, 5-9.) With respect to the issue of consumer confusion, Plaintiff intends to use the documents obtained pursuant to Request No. 6 to identify the third parties who received the communications and "send a short survey to each consumer who improperly received the letter about their confusion or lack thereof." (*Id.* at 8-9.)

As to Defendants' objections, Plaintiff argues: (1) that any objections have been waived because they are untimely; (2) the objections are improper boilerplate objections; and (3) the discovery at issue does not implicate concerns under the Health Insurance Portability and Accountability Act ("HIPAA") because the Protective Order (Dkt. No. 28) in place provides sufficient protection to non-party patients of North Memorial. (*Id.* at 10-13.)

Defendants respond that the Motion to Compel should be denied because (1) the discovery sought by Plaintiff is not proportional to the needs of this case in that it "would

include written communications that are not at issue in this lawsuit, such as validation requests, payment plans, payment reminders, and any other letter other than the letter Plaintiff is complaining that was sent;" (2) "Plaintiff is essentially seeking class discovery that would not be proper in a class action case, namely the identification of *all* members of a potentially very large class;" (3) Plaintiff's proposed survey could cause the recipients to believe Defendants had violated HIPAA; (4) Plaintiff's proposed survey would be inadmissible because Plaintiff has not identified any expert who would design or conduct the survey; and (5) the communications at issue include letters "received regarding a balance due for medical treatment provided by [North Memorial], which raises numerous HIPAA and privacy concerns about disclosing confidential health and personal information." (Dkt. No. 56 ¶¶ 6-8, 14-17 (footnote omitted).) Defendants also argue they did not waive their objections. (*Id.* at 11-12.)

Plaintiff's counsel provided additional detail about the proposed survey during the February 22 hearing.[1] At the hearing (for the first time), Plaintiff provided the Court with a copy of a survey sent to consumers in *Dakowa v. MSW Capital, LLC*, No. 16-cv-2753 (ADM/DTS) (D. Minn.), regarding "interlocking discovery"[2] received from a creditor (reproduced below):

---

[1] During the hearing, Plaintiff's counsel described the survey as a "questionnaire" rather than a survey. It is unclear why counsel believes this distinction makes any difference to the analysis.

[2] An example of "interlocking discovery" can be found at Docket No. 10-5 in *Dakowa v. MSW Capital, LLC*, No. 16-cv-2753 (ADM/DTS) (D. Minn.).

**"Interlocking Discovery" SURVEY**

1. Did you receive a document entitled "Interlocking Discovery" from the Law Firm of Messerli and Kramer?

   YES ____✓____          NO _____

2. Were you confused by the document entitled "Interlocking Discovery" that you received from Law Firm Messerli and Kramer?

   YES ____✓____          NO _____

3. Did you respond to the document entitled "Interlocking Discovery" that you received from Law Firm Messerli and Kramer?

   YES _____          NO ____✓____

4. If you answered "no" to question #3, is the reason you **did** **not** respond to the document entitled "Interlocking Discovery" because you were confused by the document?

   YES ____✓____          NO _____

Plaintiff's counsel explained that they proposed to use the documents produced in response to Request No. 6 to identify non-party patients of North Memorial who had received "N41" and "G41" correspondence[3] and send a survey drafted by Plaintiff's counsel questioning whether the recipient was confused by the receipt of such correspondence along with a cover letter from their office. The cover letter would explain that the Court had ordered that a letter sent to the recipient by Credit Management be produced to Plaintiff, and would ask the patient to complete and return

---

[3] The "N41" and "G41" designations apparently refer to the type of letters received by Plaintiff. Although Plaintiff had knowledge of these designations as early as October 17, 2018, Plaintiff did not specifically request them in Set II of discovery served on January 28, 2019 or limit her request to these types of letters until the February 22 hearing.

the survey.[4]  Plaintiff's counsel conceded that no expert would be used in connection

with the survey, as Plaintiff's deadline to identify experts passed on February 1, 2019

(Dkt. No. 21 at 2), three weeks before the February 22 hearing.[5]  The cover letter and

survey would not include a copy of the actual Credit Management communication used

to identify the non-party recipients.  Based on the information available to the Court, it

appears that the cover letter and survey would need to include protected health

information under HIPAA, including names of the individuals and the fact that they had

received a bill related to their medical care by North Memorial.[6]  Indeed, at the hearing,

one of the possible survey questions referenced by Plaintiff's counsel was "after

receiving the letter from Credit Management, LP, were you confused about your ability

to receive charitable care from North Memorial?"  While Plaintiff's counsel attempted to

downplay the HIPPA and privacy concerns on the basis that such a question does not

disclose any medical procedure, the question implicitly acknowledges that Plaintiff and

---

[4]  While HIPAA prohibits releasing individually identifiable health information without the party's consent, it can do so in response to a court order or discovery request under certain circumstances.  45 C.F.R. § 164.512(e); *see also Nyrop v. Indep. Sch. Dist. No. 11*, No. 07-CV-4663 (DSD/JJG), 2008 WL 11347410, at *3 (D. Minn. Aug. 21, 2008).

[5]  Plaintiff has not sought an extension of expert discovery nor explained why she did not retain an expert to conduct the survey.  In addition, Plaintiff failed to adequately explain why she did not seek extrinsic evidence through a general consumer survey that would not implicate the same privacy concerns (or concerns related to the Protective Order) raised by contacting North Memorial patients.

[6]  HIPAA protected health information may include information that "Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or **future payment for the provision of health care to an individual**."  45 C.F.R. § 160.103 (emphasis added).

their counsel likely know the fact he patients received medical care from North Memorial.

In addition, Plaintiff's counsel represented that an unidentified number of the consumers who received the survey in *Dakowa* contacted Plaintiff's counsel and volunteered serve as supporting witnesses in that case.[7] When the Court asked counsel what he would say to a North Memorial patient who contacted him to say that the patient had received the letter at issue and asked "what can we do about it?," counsel stated that he would probably provide information about the present lawsuit and if they asked "do we have a remedy based on this letter?," his response would be to "encourage" them to talk to legal counsel. Plaintiff's counsel did not believe advising the North Memorial patients to contact legal counsel if they contacted him would violate the Protective Order in this case because those patients had a right to bring a lawsuit.

## B.  Waiver of Objections

The Court concludes that Defendants have not waived their objections to Request No. 6. Pursuant to Rule 34, a party responding to request for documents has 30 days from service of the discovery to respond or otherwise object. *See* Fed. R. Civ. P. 34(b)(2)(A). Unlike Rule 33(b)(4) (pertaining to interrogatories), Rule 34 does not contain explicit language providing that a failure to timely object to discovery constitutes a waiver of those objections. However, courts in this District have adopted a rule that such a waiver is implied into Rule 34 for late objections unless the Court excuses the

---

[7]     *Dakowa* settled before trial and summary judgment, so it does not appear that any of the potential witnesses identified through the survey process in *Dakowa* ever testified at trial or provided evidence used for dispositive motion practice.

failure for good cause shown.  *See Cargill v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012) (string citation omitted); *see also Godfrey v. State Farm Fire & Cas. Co*., No. 18-cv-524 (JNE/TNL), 2019 WL 586675, at *2 (D. Minn. Feb. 13, 2019); *U.S. Bank Nat'l Ass'n v. Equity Bank*, No. 12-cv-2023 (PAM/JJG), 2014 WL 12601036, at *4 (D. Minn. May 7, 2014).

Plaintiff argues Defendants failed to serve their objections within 30 days from November 29, 2018, the date on which Plaintiff emailed Request No. 6 to Defendants' counsel.  Defendants counter that their objections are not untimely because they never consented to service of discovery via email.  (Dkt. No. 56 at 11-12.)  In support of their waiver argument, Plaintiff relies on the Electronic Case Filing Procedures Guide for the District Court of Minnesota ("ECF Filing Guide"),[8] section D(8), for the proposition that parties consent to the electronic service of all pleadings, including discovery, by registering for the District of Minnesota's Electronic Case Filing system ("ECF").  (Dkt. No. 53 at 2 n.1.)  The provision relied upon by Plaintiff is as follows:

> Registration as a participant in the Electronic Filing System constitutes consent to electronic service of **all documents** in accordance with the Federal Rules of Civil and Criminal procedure.

ECF Filing Guide, Section D(8) (emphasis added).

Plaintiff's argument ignores the fact that the introduction section to the ECF Filing Guide makes it evident that it pertains to electronic filings with the Court and the service of those electronically filed documents:

---

[8]     A copy of the ECF Filing Guide can be found at http://www.mnd.uscourts.gov/cmecf/ guides/Civil-ECF-Procedures-Guide.pdf.

11

> Unless otherwise permitted by these administrative procedures, by local rules, or by a general order of the court, or unless otherwise specifically authorized by the assigned District or Magistrate Judge, all **documents** [] submitted for filing in civil cases in this district on or after May 17, 2004, no matter when a case was originally filed, must be filed electronically as Portable Document Format (PDF) files using the Electronic Case Filing System (ECF).

ECF Filing Guide, Section I(A) (emphasis added) (footnote omitted).

Federal Rule of Civil Procedure 5 specifically provides that requests for production cannot be filed on ECF without the Court's permission. *See* Fed. R. Civ. P. 5(d)(1)(A) ("[T]he following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: depositions, interrogatories, requests for documents or tangible things or to permit entry onto land, and requests for admission.). Nothing about Rule 5 is changed by the ECF Filing Guide, which explains that "documents" are motions and pleadings submitted to the Court for its consideration. *See* ECF Filing Guide at 3 n.1. ("The requirement that all documents be filed electronically includes motions, memoranda, briefs, exhibits, etc. It also includes transcripts of proceedings, and deposition transcripts if they are filed with the court (see LR 5.1; LR 80.1.)"). If discovery cannot be filed on ECF, then the ECF Guide's provision relating to consent to electronic service cannot apply to discovery that is not submitted to the Court for consideration with a motion or other proceeding.

Rule 5 specifically explains the procedure for effective electronic service: "sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means **that the person consented to in writing**--in either of which events service is complete upon filing or sending." *See* Fed. R. Civ. P.

5(b)(2)(E) (emphasis added).  Here, there is no representation that Plaintiff obtained written consent from Defendants before serving Request No. 6 via email.  Because Plaintiff had not properly served Request No. 6, Defendants' objections are not untimely and have not been waived.

Even assuming that service by email was proper, the Court concludes that Defendants have not waived their objections.  Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown.  *See Cargill*, 284 F.R.D. at 424.  In this case, the discovery was served via email on November 29, 2018.  This would have given Defendants until December 31, 2018 to object.  *See* Fed. R. Civ. P. 34(b)(2)(A); Fed. R. Civ. P. 6(a)(2)(C) (where discovery would have been due on a weekend, the period continued to through Monday, December 31, 2018).  Defendants served their objections only 10 days after December 31, a day after Plaintiff's deficiency email.  Based on these facts, the Court finds good cause here to excuse any untimeliness of Defendants' objections.  The delay was brief, and Defendants did not act in bad faith since Plaintiff served the discovery in manner that did not comply with the Federal Rules of Civil Procedure.  In addition, Plaintiff has not demonstrated any real prejudice, and deeming the objections waived would be too harsh a penalty.  *See U.S. Bank Nat'l Ass'n,* 2014 WL 12601036, at *4 (finding good cause where the delay related to objections was brief and the party seeking waiver failed to propound any prejudice as the result of the untimeliness).

For all of the reasons stated above, the Court finds that Defendants have not waived their objections.[9]

## C.     Relevancy to the Amount of Statutory Damages

Plaintiff argues that letters to non-party patients of North Memorial go to the frequency and persistence of Credit Management's alleged noncompliance with the FDCPA, which in turn is relevant to the amount of statutory damages. (Dkt. No. 54 at 5.) Courts are authorized to award up to $1,000.00 in statutory damages per plaintiff for any violation of the FDCPA. *See* 15 U.S.C. § 1692k(a)(2)(A). Factors to be considered by a court in determining an appropriate statutory damages award include the frequency and persistence of noncompliance by the debt collector; the nature of such noncompliance; and the extent to which such noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(1); *see also Goetze v. CRA Collections, Inc.*, No. 15-cv-3169 (MJD/FLN), 2017 WL 5891693, at *3 (D. Minn. Nov. 28, 2017) (citation omitted).

---

[9]     Plaintiff also argues that Defendants' "boilerplate objections" are deficient. (Dkt. No. 54 at 11-12.). Rule 34 provides that a party responding to a request for production must "state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Even if Defendants' objections do not include the reasons for their objections, the Court may find that a request on its face is not proportional to the needs of this case, given the relevance of the requested discovery. *See Orange Lake Country Club, Inc. v. Castle Law Grp., P.C.*, No. 617CV1044ORL31DCI, 2018 WL 3390254, at *3 (M.D. Fla. Feb. 21, 2018) ("Although Defendants Castle Law and Phillips make boilerplate objections that are insufficient and are deemed waived, the Court finds that the Requests are overly broad on their face, and fail to survive Rule 26(b) scrutiny, in that they are not proportional to the needs of this case, given the relevance of the requested discovery); *see also* Fed. R. Civ. P. 26(b)(2)(C). As set forth more fully below, based on the scope and relevancy of the information sought balanced against the interests of non-party patients and the restrictions of the Protective Order in this action, the Court finds that Request No. 6 on its face is overbroad and non-proportional to the needs of this case.

There is a split of authority as to whether the number of non-party consumers who were subjected to the same debt collector communication as an FDCPA plaintiff is relevant to the "frequency and persistence of noncompliance" for the purposes of determining the appropriate statutory damages.[10] One line of cases holds that the number of non-party consumers exposed to the same illegal conduct is irrelevant to the amount an individual receives in statutory damages. These cases rely on the fact that the statutory language in § 1692k(b)(1) applying to individuals does not contain the element "of the number of persons adversely affected" that is included as an element to statutory damages under § 1692k(b)(2) for class actions. *See Nicander v. Hecker*, No. C07-05838 (JF)(HRL), 2009 WL 5084087, at *2 (N.D. Cal. Dec. 21, 2009) (citations omitted); *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 506 (N.D. Ill. 2009), *objections overruled*, No. 09 C 2264, 2010 WL 308975 (N.D. Ill. Jan. 13, 2010); *Richard v. Oak Tree Grp. Inc.*, No. 1:06-cv-362, 2008 WL 5060319, at *8-9 (W.D. Mich. Nov. 21, 2008) (citations omitted); *Cusumano v. NRB, Inc.*, No. 96 C 6876, 1998 WL 673833, at *2 (N.D. Ill. Sept. 23, 1998) (citations omitted) ("There is nothing in the clear language of the FDCPA which suggests that—in an individual action, as opposed to a class action—a court looks to a debt collector's practices regarding persons other than the plaintiff in determining the 'frequency and persistence of noncompliance.'"); *Powell v. Computer Credit, Inc.*, 975 F. Supp. 1034, 1039 (S.D. Ohio 1997), *aff'd*, No. 97-3979, 1998 WL 773989 (6th Cir. Oct. 15, 1998) (holding that in the language of § 1692k(b)(1), "Congress meant that the Court should consider the debt collector's noncompliance as to the

---

[10] There are no Eighth Circuit cases directly addressing this issue.

15

individual plaintiff only, and not to others who may have been subject to the debt collector's noncompliance."); *Dewey v. Associated Collectors, Inc.*, 927 F. Supp. 1172, 1175-76 (W.D. Wis. 1996) ("[T]he defendant's actions with respect to other consumers had no relevance in an individual action in which the amount of liability was to be determined in accordance with § 1692k(b)(1)."). Under these lines of cases, evidence of "frequency and persistence of noncompliance" would include the number of times a debt collector made improper attempts to collect on the individual plaintiff consumer. *See Clark v. Brewer, Michaels & Kane, LLC*, No. 09-CV-188A, 2009 WL 3303716, at *2 (W.D.N.Y. Oct. 14, 2009) (taking into account repeated harassment tactics to pressure plaintiff into paying for debt in determining statutory damages under § 1692k(b)(1)).

Other courts have concluded that whether a debt collector sends similar communications to third-party consumers is relevant to the "the frequency and persistence of noncompliance by the debt collector" element under § 1692k(b)(1). *See, e.g., Hernandez v. Guglielmo*, 977 F. Supp. 2d 1054, 1056 (D. Nev. 2013); *Johnson v. CFS II, Inc.*, No. 12-CV-01091-LHK, 2013 WL 1809081, at *10 (N.D. Cal. Apr. 28, 2013) (citation omitted) ("Johnson presents no evidence in this case indicating that CFS persistently sends out deficient debt collection notices or that CFS sent the March 4, 2011 letter in an attempt to intentionally circumvent the purpose of the FDCPA. Rather, it appears more likely that CFS made a mistake."); *Yancey v. Hooten*, 180 F.R.D. 203, 208 (D. Conn. 1998) ("The defendant offers no support for his interpretation of 15 U.S.C. § 1692k as referring to the debt collector's conduct toward a specific debtor, not to all debtors."); *Riveria v. MAB Collections*, 682 F. Supp. 174, 179 (W.D.N.Y. 1988).

Assuming, for purposes of the Motion to Compel, that whether Credit Management sent similar letters to other non-party consumers is relevant to the "frequency and persistence of noncompliance," the Court finds the broad discovery sought by Request No. 6 is not proportionate to the needs of this case. Request No. 6 seeks "all written communication between Credit Management LP and patients of North Memorial Health Care prior to October 30, 2018, where the patient had previously received written communication from The Affiliated Group Inc." (Dkt. No. 54-1 at 1.) As Defendants point out, this request is not limited to debt collection letters of the type Plaintiff received in this action, but could also include correspondence about payment plans, validation request, and other written correspondence. This request for "all written communication[s]" is not proportional to the needs of Plaintiff in obtaining evidence of "frequency and persistence of noncompliance" for the purposes of determining the appropriate statutory damages—which can amount to no more than $1,000.00. At the hearing, Plaintiff's counsel suggested that the request could be narrowed to the "N41" and "G41" letters of the type sent to Plaintiff. Plaintiff's counsel conceded that there are other less burdensome methods to discover the number of times the letters of that type were sent to other consumers, including through the Rule 30(b)(6) deposition of Credit Management or propounding a tailored interrogatory to that effect. If Plaintiff has not already sought this information through the Rule 30(b)(6) deposition of Credit Management[11] or by propounding such an interrogatory, Plaintiff may propound a single

---

[11] Plaintiff's counsel represented at the hearing that Credit Management's Rule 30(b)(6) deposition has not yet been taken.

interrogatory to Defendants seeking the number of North Memorial patients who received "N41" and "G41" letters before October 30, 2018 who had previously been sent collection letters by Affiliated. The Court will extend the fact discovery deadline in this matter to May 1, 2019 for purposes of this interrogatory only.

**D.      Relevancy to Bona Fide Error Defense**

As mentioned previously, Plaintiff also argues that Request No. 6 seeks relevant information regarding the frequency of Defendants' alleged violations because it is relevant to the "bona fide error" defense asserted by Defendants. (Dkt. No. 53 at 2.) In particular, Plaintiff relied on the fact that, "Defendants assert the frequency of the FDCPA violation (letters to similarly situated consumers) is relevant to whether the violation was 'not intentional' and whether the procedures were reasonably adapted to prevent the error." (*Id.* at 7.) Indeed, Defendants have asserted as part of their Answer to the Second Amended Complaint the following affirmative defense:

> Any violation of the Fair Debt Collection Practices Act was not intentional and resulted from a bona fide error within the meaning of 15 U.S.C. § 1692k.

(Dkt. No. 50 at 4-5.)

The FDCPA includes a narrow carve-out to the general rule of strict liability, known as the "bona fide error" defense. Section 1692k(c) of the FDCPA provides that:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and **resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error**.

15 U.S.C. § 1692k(c) (emphasis added).

Defendants argue that Plaintiff does not cite to any cases finding that conduct towards nonparty individuals is necessary or admissible in a case against an individual for purposes of the bona fide error defense. (Dkt. No. 56 at 2.) The U.S. Supreme Court has held that the FDCPA's bona fide error defense does not encompass "mistakes of law" or "misinterpretations of the requirements of the Act" itself. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 582-87, 604 (2010). The Supreme Court explicitly did not reach the issue of whether § 1692k(c)'s bona fide error defense applies "when a violation results from a debt collector's misinterpretation of the legal requirements of state law or federal law other than the FDCPA," which is one of the violations at issue in this case. *Id.* at 580 n.4. However, the Eighth Circuit has concluded that 1692k(c)'s bona fide error defense did not apply to FDCPA liability resulting from a creditor's mistaken legal interpretation of Minnesota law. *See Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451-52 (8th Cir. 2001) (FDCPA liability resulting from a creditor's mistaken legal interpretation of Minnesota's garnishment statute); *see also Micks v. Gurstel Law Firm, P.C.*, No. 17-CV-4659 (ECT/ECW), 2019 WL 418850, at *13 (D. Minn. Feb. 1, 2019). In any event, the Supreme Court in *Jerman* concluded § 1692k(c)'s requirement that debt collectors maintain procedures reasonably adapted to avoid any bona fide errors referred only to measures designed "to avoid errors like clerical or factual mistakes." 559 U.S. at 587. "To establish the bona fide error defense, a debt collector must prove by a preponderance of the evidence that its FDCPA violation was unintentional and was caused by an objectively bona fide error (i.e., one that is plausible and reasonable) made despite the use of procedures reasonably adapted to prevent that

specific error." *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 420 (8th Cir. 2008) (citation omitted); *see also Micks*, 2019 WL 418850, at *10.

Courts have concluded that evidence that a debt collector took similar actions with respect to other debtors is relevant to a defendant's bona fide error defense. *See Mohr v. Sec. Credit Servs.*, LLC, 141 F. Supp. 3d 179, 183-84 (N.D.N.Y. 2015) ("[T]he Court agrees with plaintiff that the complaints may lead to discoverable material relevant to defendants' bona fide error defense."); *Strom v. Nat'l Enter. Sys., Inc.*, No. 09-CV-72A(F), 2010 WL 1533383, at *1 (W.D.N.Y. Apr. 15, 2010) ("Plaintiff may also use such previous multiple violations [BBB and attorneys general complaints] to negate Defendant's bona fide clerical error defense."); *but see*, *Cusumano*, 1998 WL 673833, at *3 ("Cusumanos do not persuasively explain how NRB's actions with respect to others would tend to prove whether NRB did or did not make a bona fide error in its actions with respect to the Cusumanos.") While the Court agrees that the number of similar letters to non-party consumers may be relevant to whether the violation was "not intentional" and whether Defendants' procedures were reasonably adapted to prevent the error, the issue of intent and procedures (not the identity of the recipients of the collection letters) is what bears on Defendants' conduct. *See Hoch v. Mid-Minnesota Mgmt. Servs. Inc.*, No. CV 15-2445 ADM/LIB, 2016 WL 386037, at *4 (D. Minn. Feb. 1, 2016) ("[A] debt collector's intent is irrelevant unless the debt collector can satisfy the bona fide error defense under § 1692k(c).") (citation omitted).

Plaintiff has not explained why she needs copies of the actual correspondence to rebut Defendants' bona fide error defense. Indeed, Plaintiff's counsel agreed that, as with

Plaintiff's argument that "the frequency and persistence of such noncompliance" is relevant to statutory damages, information relevant to the bona fide mistake defense could be obtained via deposition or interrogatories. As stated above with respect to statutory damages, Request No. 6 is not proportional to the needs of Plaintiff in providing evidence of frequency as there are other methods to discover this information that are less burdensome, such as through a Rule 30(b)(6) deposition of Credit Management or tailored interrogatories. Plaintiff may obtain information about the frequency of such letters via the tailored interrogatory permitted in Section III.C.

**E.      Consumer Confusion**

Plaintiff represented that she needs the letters to obtain the names and addresses of the North Memorial patients that received collection letters from both Affiliated and Credit Management for purposes of sending a survey directed to "consumer confusion" to those patients. The FDCPA "prohibits a debt collector from asserting any 'false, deceptive, or misleading representation,' or using any 'unfair or unconscionable means,' to attempt to collect a debt." *Coyne v. Midland Funding LLC*, 895 F.3d 1035, 1037 (8th Cir. 2018) (citing 15 U.S.C. §§ 1692e, 1692f). When evaluating whether a collection letter sent to a debtor uses a prohibited representation or means, courts "normally view it 'through the eyes of the unsophisticated consumer.'" *Id.* (quoting *Freyermuth v. Credit Bureau Servs.*, Inc., 248 F.3d 767, 771 (8th Cir. 2001)). The "unsophisticated consumer" standard "is designed to protect consumers of below average intelligence or sophistication." *Id.* Such a standard not only "protects the uninformed or naive consumer," but also includes "an objective element of reasonableness," to ensure that

debt collectors are not held liable as a result of "peculiar interpretations of collection letters." *See Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317-18 (8th Cir. 2004) (citation and marks omitted); *see also Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757, 762 (8th Cir. 2018) (finding that the unsophisticated consumer standard "is designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung of the sophistication ladder") (marks and citation omitted).

The objective element of reasonableness is often decided as a matter of law without reliance on survey or other extrinsic evidence. For example, courts need not look at extrinsic evidence where the representations at issue are on their face not misleading or deceptive. *See Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009) (where cases involve "statements that plainly, on their face, are not misleading or deceptive," courts need not look to extrinsic evidence to determine whether consumers were confused."); *see also Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1056 (8th Cir. 2002*)* ("We conclude that the VA's 'only alternative' statement is not literally false. Even if it were deemed to be literally false, however, it would not mislead because it effectively conveys the consequences of failing to sign and return the VA. We conclude as a matter of law that the statement does not violate § 1692e."); *Adams v. J.C. Christensen & Assocs., Inc.*, 777 F. Supp. 2d 1193, 1197-98 (D. Minn. 2011) (citations omitted) ("The parties agree as to the letter's contents but disagree on the legal implications of those contents under the FDCPA. In such a situation, the Court is confronted with a question of law that may be resolved on a Rule 12(c) motion. The Court concludes that the hypothetical

'unsophisticated consumer' would not be misled or deceived by Christensen's June 8, 2010 letter, and it further concludes that the letter did not threaten legal action. Accordingly, the pleadings fail to establish a violation of the FDCPA, and Christensen is entitled to judgment as a matter of law.") (citations omitted).  Similarly, no extrinsic evidence is necessary for communications that are clearly confusing or deceptive.  *See Ruth*, 577 F.3d at 801 ("Not every meritorious FDCPA claim requires such extrinsic evidence, however; some collection notices are clearly misleading on their face.  Cases involving plainly deceptive communications fall into a third category, one where we will grant summary judgment for the plaintiffs without requiring them to prove what is already clear."); *see also Zazueta v. Med. Data Sys., Inc.*, No. 4:17-CV-2796-SNLJ, 2018 WL 3219750, at *2 (E.D. Mo. July 2, 2018) (quoting *McHugh v. Valarity*, LLC, No. 4:14-CV-858-JAR, 2014 WL 6772469, at *1 (E.D. Mo. Dec. 1, 2014) (alterations in original), quoting *Bode v. Encore Receivables Mgmt., Inc.*, 2007 WL 2493898, at *4 (E.D. Wis. Aug. 30, 2007)) ("Under the 'unsophisticated consumer' standard, a court may grant summary judgment when collection activity 'on its face violates the [FDCPA] . . . even in the absence of extrinsic evidence.'").

However, courts have concluded that where a case involves statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer, extrinsic evidence, such as consumer surveys, are probative to whether unsophisticated consumers do in fact find the challenged statements misleading or deceptive.  *See Ruth*, 577 F.3d at 801 (string citation omitted); *see also Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 322-23 (7th Cir. 2016); *Campbell v. Credit*

*Prot. Ass'n, L.P.*, No. 4:12CV00289AGF, 2013 WL 1282348, at *5 (E.D. Mo. Mar. 27,

2013) ("[W]hen the letter itself does not plainly reveal that it would be confusing to a

significant fraction of the population, the plaintiff must come forward with evidence

beyond the letter and beyond his own self-serving assertions that the letter is confusing in

order to create a genuine issue of material fact for trial. Such additional or 'extrinsic

evidence' may be satisfied through evidence such as consumer surveys or expert

testimony.") (citations and marks omitted).

Defendants do not argue that extrinsic evidence such as surveys are not relevant to

whether the hypothetical "unsophisticated consumer" would be misled or deceived by the

communications from Defendants to Plaintiff at issue. Instead, Defendants argue that it

is unreasonable to force them to spend the time and money required to produce these

letters (1) when Plaintiff has given no indication that she would be able to conduct a

survey based on the information obtained from the letters that is actually admissible

because she failed to retain an expert to conduct the survey and (2) due to the

confidentiality and privacy issues raised by HIPAA. (Dkt. No. 56 at 10-11.)

Courts have concluded that confusion surveys, including those conducted in the

FDCPA context, are a form of expert testimony. *See Evory v. RJM Acquisitions Funding*

*L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007) ("[S]urvey evidence in debt-collection . . .

cases must comply with the principles of professional survey research; if it does not, it is

not even admissible, . . . let alone probative of deception.") (citations omitted); *Riel v.*

*Immediate Credit Recovery Inc.*, No. 17-CV-440-JPS, 2018 WL 502659, at *3 (E.D. Wis.

Jan. 22, 2018) (FDCPA case) (citing *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 580 (7th

Cir. 2010)) ("The problem for Plaintiff is that his only extrinsic evidence—the survey—is inadmissible. The Court of Appeals treats survey evidence as a form of expert testimony."); *see generally*, *Elliott v. Google, Inc.*, 860 F.3d 1151, 1160 (9th Cir. 2017) (citing Federal Judicial Center, Reference Manual on Scientific Evidence 364 (3d ed. 2011) (explaining that valid survey design typically requires graduate training or professional experience in survey research)) (concluding that the district court properly excluded from evidence two of plaintiff's surveys because "these surveys were designed and conducted by Elliott's counsel, who is not qualified to design or interpret surveys"); *Sarco Creek Ranch v. Greeson*, 6:14-CV-13, 2015 WL 7871047, *3 (S.D. Tex. 2015) (excluding survey to show secondary meaning from evidence for several reasons, including that it was administered by plaintiff's attorney); *Hodgdon Powder Co., Inc. v. Alliant Techsystems, Inc.*, 512 F. Supp. 2d 1178, 1182 (D. Kan. 2007) (informal survey that was designed and run entirely by plaintiff's attorney without any input from a survey professional was "untrustworthy and inadmissible" into evidence).

Plaintiff relies on U.S. Magistrate Judge David T. Schultz's decision in *Dakowa* where he concluded "that allowing Dakowa access to past cases involving 'interlocking discovery' is relevant to his claim that such requests are by nature confusing and violate the FDCPA." (Dkt. No. 53 at 9; Dkt. No. 54-4 at 13.) In *Dakowa*, the plaintiff sought via interrogatories a list of all cases—filed and unfiled—in which the defendants served interlocking discovery on debtors in state legal actions during the previous twelve months. (Dkt. No. 54-4 at 12.) Plaintiff's counsel asserted at the February 22 hearing that the survey he provided the Court was ultimately issued to non-party debtors in

*Dakowa*.  The Court does not find Plaintiff's reliance on Magistrate Judge Schultz's Order persuasive because Plaintiff has not identified anything in the Order or related briefings and submissions that indicates Magistrate Judge Schultz ordered the list of cases produced so the *Dakowa* plaintiff could identify the non-party debtors and send them a survey about the interlocking discovery.  Indeed, while Magistrate Judge Schultz ordered the list of cases produced to the *Dakowa* plaintiff, he also stated that the defendants "need not include identifying information such as the [underlying case] defendant's name and address but should include the service date, the case number and the jurisdiction where the case was filed.  If the case was never filed, then M&K must either provide the caption of the matter or a copy of the 'interlocking discovery; that was actually served."  (Dkt. No. 54-4 at 14.)

Plaintiff has cited no case where a court ordered the type of discovery she seeks— copies of letters containing HIPAA protected information—for the purpose of sending a survey drafted by an attorney to non-party patients who had received the letters so the attorney could collect the number of instances of "consumer confusion."  When considering the proportionality factors, the Court finds the likely benefit of Plaintiff's proposed discovery is outweighed by the burden and expense the discovery would impose on Defendants.  Based on the available information before the Court, the likely benefit of ordering Defendants to produce the requested correspondence would be an unknown number of persons potentially willing to testify at trial that they were "confused" by correspondence similar to that received by Plaintiff, and "confusion" data generated from an attorney-drafted survey and analyzed without the benefit of an expert.

Given that the question of confusion or materiality is routinely determined as a matter of law (*see, e.g.*, *Ruth*, 577 F.3d at 801; *Peters*, 277 F.3d at 1056; *Zazueta*, 2018 WL 3219750, at *2; *Adams*, 777 F. Supp. 2d at 1197-98), the lack of probative value (not to mention potential inadmissibility) of the attorney-drafted and attorney-analyzed survey results (*see Evory*, 505 F.3d at 776), and that Plaintiff may offer her own testimony as to confusion, the likely benefit obtained from this discovery is minimal.

Further, setting aside the burden and expense imposed on Defendants in collecting and producing the requested documents, the Court is persuaded by Defendants' arguments that many of the potentially thousands of non-party patients who would receive a cover letter and proposed survey inquiring about correspondence relating to unpaid medical debt might well have concerns about whether Affiliated, Credit Management, and/or North Memorial handled their protected health information as required by HIPAA, resulting in unwarranted negative consequences for Defendants and North Memorial[12]—not to mention anxiety on the part of the patients caused by receiving a letter and survey about their medical debt that refers to a court order.[13] *See Beseke*, 2018 WL 6040016, at *3 (quoting Fed. R. Civ. P. 26(b)(1)) (taking into account "whether

---

[12]     North Memorial is a covered entity pursuant to HIPAA.  *See* 45 C.F.R. § 160.103. There is no indication that either party has notified North Memorial that protected information could be released to Plaintiff in order to contact North Memorial patients.

[13]     Including, as Plaintiff's counsel proposed, language that the survey was ordered by a Court seems likely to raise additional concerns on the part of the recipients.  While Plaintiff's counsel argued at the hearing that the bills related to the non-parties have already been sent out once to the patients, the difference here is that bills and their information have presumably never been provided to a party who is not the sender or intended recipient—in this case Plaintiff.

the burden or expense of the proposed discovery outweighs its likely benefit'"); *see, generally*, *In re Nat'l Hockey League Players' Concussion Injury Litig.*, No. MDL 14-2551 (SRN), 2017 WL 1493671, at *7 (D. Minn. Apr. 26, 2017) (quoting *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999)) (finding in the Rule 45 context that "[i]n evaluating whether the burden of production outweighs the likely benefit of discovery, 'concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs'") (citation omitted). The Court also has doubts about the ability of the Protective Order in this case to protect the non-party patients' HIPAA protected health information. Plaintiff's counsel did not propose any means of ensuring that the proposed survey will be received and opened by the non-party who incurred the medical debt rather than a spouse, roommate, parent, child, or subsequent occupant at the address. Finally, the Court is troubled by Plaintiff's counsel's willingness to use the survey to "encourage" survey recipients to seek legal counsel if asked by the recipients. Counsel also noted that if those patients choose to use the information outside of this litigation, then that is a right that they have. While, as counsel argued, the non-party patients have the right to bring an FDCPA action, Plaintiff and her counsel do not have the right to use confidential correspondence covered by the Protective Order in this case in a manner that creates an unnecessary and uncontrolled risk that it may be used for purposes outside of this lawsuit.[14] (Dkt. No. 28, ¶ 3(a) ("A confidential document may be used only in this

---

[14] The Court notes that the North Memorial patients are not governed by the Protective Order, and using the letters in the manner proposed by Plaintiff creates an

action.").)  Finally, although not by itself dispositive, the burden and risks resulting from disclosing the HIPAA protected information of potentially thousands of non-party North Memorial patients is not commensurate with the amount in controversy in this case— including the up to $1,000.00 in statutory damages and any damages related to Plaintiff's emotional distress.  *See* Fed. R. Civ. P. 26(b)(1).  In balancing the marginal probative value that the counsel's confusion survey will provide to the trier of fact (not to mention the potential inadmissibility of the results) against the invasion of privacy of non-party North Memorial patients, the burden on non-party North Memorial, the burden on Defendants, and the Court's interest in enforcing its Protective Order, the Court concludes that the Request No. 6 is not proportional to the needs of the case.  The Court will not compel Defendants to produce the requested documents.

## IV.  ORDER

Based on the files, records, and proceedings herein,

**IT IS ORDERED THAT:**

1.  Plaintiff Dina Klein's Motion to Compel (Dkt. No. 51) is **DENIED**.

2.  Plaintiff may propound a single interrogatory to Defendants (only to the extent that Plaintiff has not already sought such information through the Rule 30(b)(6) deposition of Credit Management or any other form of discovery), seeking the number of North Memorial patients who received "N41" and "G41" letters before October 30, 2018 who had previously been sent collection letters by Affiliated.  The Court will extend the

---

inherent risk that Plaintiff will violate, albeit not intentionally, the Protective Order.

fact discovery deadline in this matter to May 1, 2019 for purposes of this interrogatory only.


DATED: March 22, 2019                    *s/Elizabeth Cowan Wright*
                                         ELIZABETH COWAN WRIGHT
                                         United States Magistrate Judge