# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Dina Klein,                                                 Civil No. 18-949 (DWF/ECW)

             Plaintiff,

v.                                                       **MEMORANDUM**
                                                          **OPINION AND ORDER**

The Affiliated Group, Inc., and
Credit Management, LP,

             Defendants.

_____

Darren B. Schwiebert, Esq., and James R. Mayer, Esq., DBS Law LLC, counsel for Plaintiff.

Charity A. Olson, Esq., Varnum LLP; Eugene Xerxes Martin, IV, Esq., Malone Frost Martin PLLC; Michael S. Kreidler, Esq., and Patrick M. Biren, Esq., Stich Angell Kreidler & Unke P.A., counsel for Defendants.

_____

## INTRODUCTION

This matter is before the Court on a Motion for Partial Summary Judgment brought by Plaintiff Dina Klein ("Plaintiff" or "Klein") (Doc. No. 66); and a Motion for Summary Judgment brought by Defendants The Affiliated Group, Inc. ("TAG") and Credit Management, LP ("CMLP") (together, "Defendants") (Doc. No. 60). For the reasons set forth below, the Court grants Defendants' motion and denies Plaintiff's motion.

**BACKGROUND**

In this action, Plaintiff alleges that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"). (Doc. No. 48 ("Second Am. Compl.").) The allegations center on Defendants' attempts to collect a debt owed by Plaintiff to North Memorial Health Care ("NMHC").

Before November 2017, Plaintiff incurred two debts to NMHC. (Doc. No. 65 ("Defs.' App.") Ex. C ("Plaintiff's Dep.") at 10.) Plaintiff applied for financial assistance from NMHC but was told that she did not qualify. (*Id*. at 14-16.) In November 2017, the debts were placed with TAG for collection and on November 20, 2017, TAG sent a letter to Plaintiff. (Defs.' App. Ex. A ("Gapinski Aff.") ¶ 2, Ex. A-1; Doc. No. 69 ("Schwiebert Decl.") ¶ 7, Ex. 6; Schwiebert Decl. ¶ 2, Ex. A ("NMHC 30(b)(6) Dep.") at 21-22, 39.) The letter read:

> Your account(s) has been placed for collection and payment in full is due. The below listed account(s) has been turned over to us by our client, who has given you an opportunity to satisfy this obligation. You can avoid continued collection activities by sending your payment in full directly to Affiliated Credit Services.
> . . .
>
> This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for this purpose.

(Gapinski Aff. ¶ 2, Ex. A-1.) The letter did not contain language referencing any financial aid program ("FAP") offered by NMHC.

On January 1, 2018, TAG and CMLP[1] merged. (Gapinski Aff. ¶ 6 ("TAG was integrated into CMLP"); Wilson Aff. ¶ 5 (same).)[2] Before this, TAG and CMLP had been operating as separate and distinct entities, albeit under common ownership. (Gapinski Aff. ¶ 4.) After the merger, all accounts placed with TAG for collection were placed with CMLP, CMLP incorporated all of TAG's account notes into its own, and CMLP restarted the validation period of each debt. (Wilson Aff. ¶ 5.) In addition, all contracts and any rights TAG had under those contracts were transferred and assigned to CMLP. (*Id.* ¶ 6.) Relevant to this case, TAG had a written agreement with NMHC for collection services dated December 15, 2014 (the "TAG/NMHC Agreement" or the "Agreement"). (Gapinski Aff. ¶ 2, Ex. A-2; Schwiebert Decl. ¶ 3, Ex. B ("CMLP 30(b)(6) Dep.") at 34.) The TAG/NMHC Agreement does not specifically provide for assignments or for successors of TAG, nor does it prohibit assignments.

Defendants maintain that the TAG/NMHC Agreement originally executed between TAG and NMHC, as well as all rights and terms to the Agreement, were transferred and assigned to CMLP. (Gapinski Aff. ¶¶ 6-8; Wilson Aff. ¶¶ 5-7.) In addition, in August and October of 2018, NMHC and CMI executed an amendment to the

---

[1] CMLP is a wholly owned subsidiary of The CMI Group, Inc. ("CMI"). (Defs.' App. Ex. B ("Wilson Aff.") ¶ 4.) In 2014, CMI acquired TAG. (*Id.*)

[2] On this point, Plaintiff argues that Defendants have submitted "sham affidavits" to support the theory that TAG and CMLP were integrated. Under the sham affidavit doctrine, a district court may strike an affidavit that conflicts with deposition testimony and raises only sham issues of material fact. *See City of St. Joseph, No. v. Sw. Bell Tel.*, 439 F.3d 468, 475-76 (8th Cir. 2006). Here, however, Plaintiff has not demonstrated that the affidavits raise sham issues of fact.

Agreement recognizing that TAG had been "consolidated into" CMLP and amending the Agreement to substitute the name CMLP on TAG's agreement. (Wilson Aff. ¶ 7 & ¶ 2, Ex. B-2.) The amendment further provides that "[a]ll other terms and conditions of the Agreement which are not contrary to this First Amendment shall remain in effect." (Wilson Aff. ¶ 2, Ex. B-2.)

Then, on or about March 16, 2018, CMLP sent a letter to Plaintiff, which read in part:

> Your account(s) has been placed for collection and payment in full is due. The above listed account(s) has been turned over to us by our client, who has given you an opportunity to satisfy this obligation. You can avoid continued collection activities by sending your payment in full directly to Credit Management, LP.
> . . .
> This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for this purpose.

(*Id.* ¶ 2, Ex. B-1.) The debts at issue in TAG's November 2017 and CMLP's March 2018 letters are the same medical debts incurred by Plaintiff.

Separately, NMHC resolved litigation with the Minnesota Attorney General, entering an agreement related to patient billing and medical debt collection practices. (Second Am. Comp. ¶¶ 24-25; Defs.' App. Ex. D (the "AG Agreement").) On June 22, 2012, the provisions of the AG Agreement were put into an Order and entered by the Ramsey County District Court. (Second Am. Compl. ¶ 24, Ex. A.) The Order imposes certain legal requirements on NMHC's collection practices involving third-party collectors. The AG Agreement provides in relevant part:

## COLLECTION AGENCIES

> [NMHC] shall enter into a written contract with any collection agency utilized by it to collect debt from its patients. The contract shall require the collection agency to act in accordance with the terms of this Agreement, applicable laws, and the policies described in paragraph 36.
>
> [NMHC] shall not refer any patient's account to a third party debt collection agency unless the Hospital has confirmed that:
> . . .
> d. The patient has been given a reasonable opportunity to submit an application for Charity Care, if the facts and circumstances suggest that the patient may be eligible for Charity Care, including, for example, if the patient is uninsured or is on MinnesotaCare, Medical Assistance, or other relief based on need.

(AG Agreement ¶¶ 15-16.) TAG and CMLP were aware of the AG Agreement. (CMLP 30(b)(6) Dep. at 34-35.)

Plaintiff alleges that Defendants violated the FDCPA in the following ways: (1) failing to have a written contract with NMHC as required by the AG Agreement; (2) making false statements in the March 16, 2018, billing statement; and (3) failing to include information about NMHC's FAP in both billing statements. The parties have filed cross-motions on Plaintiff's claims.

## DISCUSSION

**I. Legal Standard**

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574

F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. The FDCPA

The FDCPA is aimed at eliminating abusive debt collection practices. *Janson v. Katharyn B. Davis, LLC*, 806 F.3d 435, 437 (8th Cir. 2015). To establish a claim under the FDCPA, Plaintiff must show that: (1) she has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *See, e.g.*, *Klein v. Stewart Zlimen & Jungers, Ltd.*, Civ. No. 18-710, 2019 WL 79317, at *3 (D. Minn. Jan. 2, 2019). The statute "prohibits a debt collector from making

6

a 'false, deceptive or misleading representation or means in connection with the collection of any debt,'" *Janson*, 806 F.3d at 437 (quoting 15 U.S.C. § 1692e), and "from using 'unfair or unconscionable means to collect or attempt to collect any debt.'" *Id*. (quoting 15 U.S.C. § 1692f). In evaluating whether a communication is false or misleading, the Court considers the communication from the perspective of an "unsophisticated consumer." *Id*. (citation omitted.) This standard is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder.'" *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (citation omitted). "This standard protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters." *Id*. at 317-18.

There is no dispute that Plaintiff was the object of collection activity arising from a consumer debt or that Defendants are debt collectors under the FDCPA. Therefore, the Court considers the third element—whether Defendants have engaged in prohibited activity under the FDCPA.

### A.     15 U.S.C. § 1692f(1)

Section 1692f(1) prohibits the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Plaintiff argues that CMLP was not authorized to collect NMHC's debts

because it did not have a written contract with NMHC and, therefore, that its collection efforts violated § 1692f(1).

CMLP argues that the TAG/NMHC Agreement (which authorized TAG to collect debts owed to NMHC) and all rights and duties under that Agreement were assigned to CMLP on January 1, 2018, and that CMLP operated under that Agreement when it sent a billing statement to Plaintiff on March 16, 2018. Plaintiff, however, disputes that the Agreement was assigned, relying on the fact that the Agreement does not specifically provide for assignment. Plaintiff further argues that even if the TAG/NMHC Agreement was properly assigned to CMLP, it was not a written contract, as required by the AG Agreement.

An assignment generally operates to place the assignee in the shoes of the assignor, providing the assignee with the same legal rights held by the assignor. *Cascades Dev. of Minn. LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1099 (8th Cir. 2012). Generally, contract rights are assignable, with the exceptions of when assignment is prohibited by statute or contract, or where a contract involves a matter of personal trust or confidence. *Physical Dist. Servs., Inc. v. R.R. Donnelley*, 561 F.3d 792, 794 (8th Cir. 2009) (citing *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.3d 267, 270 (Minn. 2004).) None of these exceptions apply here. And while Plaintiff argues that the assignment is invalid because the Agreement does not affirmatively provide for assignment, she cites to no legal authority for such a proposition. Because there is no contractual provision barring assignment, the parties were free to do so.

Moreover, "[w]hether an assignment of contract rights has occurred is determined by the intent of the parties; the assignor must intend to transfer a present interest in the subject matter of the contract." *Stuart C. Irby Co. v. Tipton*, 796 F.3d 918, 924 (8th Cir. 2015) (citations omitted). Here, the record demonstrates that TAG and CMLP intended for TAG's rights under the TAG/NMHC Agreement to be transferred to CMLP. (Gapinski Aff. ¶¶ 6-8; Wilson Aff. ¶¶ 5-7.) After the merger between TAG and CMLP, the parties operated as if TAG had transferred and assigned its rights and obligations under the Agreement to CMLP. The parties even amended the Agreement to substitute CMLP for TAG. (Wilson Aff. ¶ 2, Ex. B-2.) The amendment also included a provision that "[a]ll other terms and conditions of the Agreement which are not contrary to this First Amendment shall remain in effect." (*Id*.) In addition, Defendants have pointed to record evidence that NMHC understood that CMLP had acquired TAG. (Schwiebert Decl. ¶ 2, Ex. A ("NMHC 30(b)(6) Dep.") at 34.) NMHC was aware that TAG accounts were transferred to CMLP, did not object, and referenced that their relationship was to CMLP after the merger. (*Id*. ¶ 5, Ex. D ("TAG 30(b)(6) Dep.") at 36-40, 41.) Importantly, NMHC continued to place accounts with CMLP for collection in accordance with the assigned TAG/NMHC Agreement. Because the TAG/NMHC Agreement was in writing, and TAG's rights under that contract were transferred and assigned to CMLP, the Court concludes that there existed a valid and enforceable written contract between

CMLP and NMHC. For this reason, Plaintiff's claim under § 1692f(1) fails and summary judgment is properly granted in favor of Defendants.[3]

### B. CMLP's March 16, 2018 billing statement

Plaintiff also asserts that CMLP's March 16, 2018 billing statement to Plaintiff violated § 1692e(5) and § 1692e(10) because, respectively, it threatened action that could not be legally taken and contained a false statement in an attempt to collect a consumer debt. Plaintiff bases these claims on CMLP's statement that: "The above listed account(s) have been turned over to us by our client . . . ." Plaintiff maintains that the statement is false because Plaintiff's accounts were not turned over to CMLP from NMHC and, instead TAG improperly gave the account information to CMLP. Similarly, Plaintiff claims that TAG attempted to collect the debt under a false name in violation of § 1692e(14) by claiming that the attempt was on behalf of CMLP. In support of these claims, Plaintiff relies on the argument that Plaintiff's account had not been assigned from NMHC to CMLP, and therefore it was false to state that the account was "turned over" and CMLP was threatening to take action that it could not lawfully take.

---

[3] Plaintiff argues that "the Magistrate Judge already ruled that Defendants' conduct constitutes a violation of the FDCPA." Plaintiff points to the Magistrate Judge's decision, wherein the Magistrate Judge explained that CMLP's "alleged collection of a debt for [NMHC] without a written contract in violation of the AG Agreement constitutes a viable § 1692f(1) claim." *Klein v. The Affiliated Grp., Inc. and Credit Mgmt., L.P.*, Civ. No. 18-949, 2019 WL 246768, at *8 (D. Minn. January 17, 2019). The Court does not disagree with the Magistrate Judge's decision but notes that it was made in the context of a motion to amend. Now, after reaching the merits of Plaintiff's claims, the Court finds that summary judgment is warranted.

As discussed above, TAG's rights under the TAG/NMHC Agreement were assigned to CMLP. Therefore, CMLP stepped into the shoes of TAG with respect to the TAG/NMHC Agreement. Thus, CMLP had the authority to attempt to collect under its name and did not threaten to take any action that it could not legally take. The Court finds that the CMLP's March 16, 2018 billing statement does not contain a false statement. Accordingly, Defendants are entitled to summary judgment on these claims.

C. **Notice of North Memorial's FAP**

Finally, Plaintiff claims that Defendants violated § 1692e(5) and § 1692f(1) by sending billing statements without notice regarding NMHC's FAP. Plaintiff argues that under federal regulations, NMHC is required to adopt and widely publicize a FAP, including placing notification of the FAP on billing statements. In support, Plaintiff cites to the following federal regulations: 26 C.F.R. § 1.501(r)-4(a); 26 C.F.R. § 1.501(r)-4(a)(b)(1)(ii); and 26 C.F.R. § 1.501(r)-4(b)(5)(D)(2). Moreover, Plaintiff points to NMHC's own policy requiring that patients be notified of the FAP.

The regulations cited by Plaintiff, however, require "hospital facilities" to widely publicize their FAPs, including providing conspicuous, written notice of the FAP in billing statements. 26 C.F.R. § 1.501(r)-4(a)(b)(5)(D)(2). Moreover, the regulations provide that a "hospital organization" will meet the FAP requirements "with respect to a hospital facility it operates" if its FAP meets regulation requirements. *See generally*, 26 C.F.R. § 1.50(r)-4. Defendants are not hospital organizations and they do not operate hospital facilities. (Gapinski Aff. ¶ 10; Wilson Aff. ¶ 9.) Plaintiff does not point to

11

persuasive authority to support a legal requirement that Defendants, as collectors, include FAP language in their letters under the regulations cited. Plaintiff also argues that NMHC's internal policy required Defendants to include the language. However, evidence in the record demonstrates that NMHC's internal policy required that FAP language be included on bills sent by NMHC on NMHC letterhead. (NMHC 30(b)(6) Dep. at 39-40 ("Also I want to clarify that my statement related to anything that's on the bills are statements directly from North Memorial; 'directly' meaning on North Memorial letterhead provided through the business office services.").) And even assuming that hospital policy required that FAP language be included on Defendants' collection letters, Plaintiff does not cite to any authority suggesting that the violation of an internal policy would constitute a violation of the FDCPA. *See, e.g.*, *Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004) ("The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation.").

For the above reasons, no reasonable juror could conclude that Defendants violated § 1692e(5) and § 1692f(1) by sending billing statements without notice regarding NMHC's FAP.[4]

---

[4] Defendants argue that Plaintiff does not have standing to bring a claim over the FAP because she cannot show that she was harmed. Because the claim fails on the merits, the Court need not and declines to consider this argument.

**ORDER**

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment (Doc. No. [66]) is **DENIED**;

2. Defendants' Motion for Summary Judgment (Doc. No. [60]) is **GRANTED**;

3. Defendants are entitled to summary judgment on Plaintiff's claims; and

4. Plaintiff's Second Amended Complaint (Doc. No. [48]) is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 13, 2019
                                         s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge